NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CLINT EASTWOOD MAEZ, *Appellant.*

No. 1 CA-CR 15-0336
FILED 7-14-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-116706-001
The Honorable Robert E. Miles, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

---

**H O W E**, Judge:

¶1        Clint Eastwood Maez appeals his convictions and sentences relating to a drive by shooting. Maez argues that the trial court erred by denying his request for a self-defense instruction for the use of deadly physical force. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Late one night in March 2014, K.L., her boyfriend G.G., and some of their family members were having a get-together in K.L.'s uncle's front yard. When G.G. decided to leave, his cousin E.L. volunteered to give him a ride home. As the two stood by E.L.'s car in the driveway, Maez, K.L.'s ex-boyfriend, drove past the uncle's house with his windows down, staring at them. Maez made a U-turn, passed the house again, and then sped up to the main road. G.G., recognizing Maez, yelled "what's up, get out of the car," then told E.L. to "take me to confront" him. The two followed Maez, who was already two blocks down the street, out of the residential neighborhood at a speed twice the 25 mile per hour limit, eventually getting "a couple feet" behind Maez before he turned east onto a major roadway.

¶3        E.L. and G.G. continued to follow him on the roadway, driving as fast as 50 miles per hour—10 miles above the posted speed limit—and staying about six to seven car-lengths behind Maez for a half mile. When Maez approached a major intersection, the light turned red but he ran the light and drove through the intersection. E.L. and G.G. also ran the red light to continue to follow Maez. Maez then slowed his car down and moved into the turning lane. Approximately 40 feet past the intersection, E.L. and G.G. caught up to Maez. As they pulled up to the side of Maez's car, G.G. leaned forward and saw Maez's hand pointing a gun toward his passenger's side window. Before G.G. could warn E.L. about the gun and tell him to stop the car, Maez shot at them four times. Both E.L. and G.G. sustained gunshot wounds.

¶4        G.G. identified Maez to Phoenix Police and provided Maez's address. A week later, police conducted surveillance on the address G.G. provided and eventually took Maez into custody after forcibly stopping a vehicle Maez was riding. The State charged Maez with two counts of drive by shooting, two counts of aggravated assault, one count of discharge of a firearm at a structure, and one count of misconduct involving weapons.

¶5        At Maez's jury trial, E.L. and G.G. testified that although they were speeding behind Maez, E.L. drove "normally" and never honked at Maez, never tried to touch his bumper or drive Maez's car off the road, and even stopped to wait for traffic before turning onto the roadway from the residential neighborhood. Both men further testified that neither of them were armed at the time and that neither had made any hand or gun-like gestures or motions out of their car toward Maez or had yelled anything at him while driving. G.G. further testified that he wanted E.L. to follow Maez to "chas[e] him down and confront him" to tell him to stay away from K.L., and that if "we were going to fight we were going to fight."

¶6        Based on this testimony, Maez requested a self-defense instruction for the use of deadly physical force. He argued that G.G.'s telling Maez to "get out of the car" as Maez drove by the house, wanting to confront Maez and possibly fight him, and E.L.'s fast driving to catch up to him—even running a red light to stay behind him—constituted the "slightest evidence" necessary to warrant an instruction that he was justified in using deadly physical force to defend himself. The State objected, arguing that Maez denied shooting at E.L. and G.G. by asserting in his opening statement that the State lacked sufficient evidence and by cross-examining witnesses in a manner consistent with that theory. In denying Maez's motion, the trial court concluded that insufficient evidence supported the justification instruction because no evidence showed that Maez was aware that E.L. and G.G. were following him or that Maez knew of G.G.'s intent to confront and possibly fight him.

¶7        The jury convicted Maez on all charges, finding all but the misconduct offense dangerous offenses. Maez timely appealed.

**DISCUSSION**

¶8        Maez argues that the trial court erred by denying his request to instruct the jury on self-defense by the use of deadly physical force. We review the trial court's denial of a jury instruction for an abuse of discretion, but review independently whether the evidence supports a justification instruction as a question of law that involves no discretionary factual

determination. *State v. Almeida*, 238 Ariz. 77, 80 ¶ 9, 356 P.3d 822, 825 (App. 2015). In doing so, we view the evidence in the light most favorable to the proponent of the instruction. *Id.* at 78 ¶ 2, 356 P.3d at 823. Absent a clear abuse of its discretion, we will not reverse the trial court's denial of a jury instruction. *State v. Bolten*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). We will also affirm a trial court's ruling if the result was correct for any legally correct reason. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984). Because insufficient evidence supported the self-defense instruction Maez requested, the trial court did not err in denying Maez's request.

¶9         A party is entitled to an instruction on any theory the evidence reasonably supports. *Almeida*, 238 Ariz. at 79 ¶ 9, 356 P.3d at 824. In Arizona, "a person is justified in threatening or using deadly physical force against another . . . when and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." A.R.S. § 13–405(A)(2). To be entitled to a self-defense instruction, a defendant need only present the "slightest evidence" that he acted in self-defense. *State v. King*, 225 Ariz. 87, 90 ¶ 14, 235 P.3d 240, 243 (2010). The "slightest evidence" is evidence which tends to prove a hostile demonstration—an "outward act which may be reasonably regarded as placing the defendant in imminent danger of losing his life or sustaining great bodily harm." *State v. Lujan*, 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983). The question is focused on whether a reasonable person in the defendant's circumstances would have believed that physical force was immediately necessary to protect himself. *King*, 225 Ariz. at 90 ¶ 12, 235 P.3d at 243.

¶10        Because the evidence does not show even the slightest evidence necessary to support a self-defense instruction for the use of deadly physical force, the court did not err in denying Maez's request. Deadly physical force is "force that . . . in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury." A.R.S. § 13–105(14). Here, the record shows that neither E.L. nor G.G. used or attempted to use any unlawful deadly physical force against Maez. For the majority of the time they followed Maez, E.L. and G.G. remained approximately six or seven car-lengths behind him. Neither E.L. nor G.G. yelled at or threatened Maez while they were driving. E.L. and G.G. also did not make any hand or gun-like gestures toward Maez. Further, although E.L. and G.G. drove at a high speed, the record reflects that E.L. did not honk at Maez, make any attempts to drive him off the road, touch bumpers with him, or otherwise use the vehicle to cause Maez deadly

or non-deadly harm. The record additionally shows that neither E.L. nor G.G. were armed.

¶11        Moreover, on these undisputed facts, no reasonable person in Maez's circumstances would believe that shooting E.L. and G.G. was the degree of force immediately necessary for his protection. In fact, the record shows that G.G. saw Maez pointing a gun toward the passenger's side of his car before E.L. and G.G.'s car had pulled directly beside him. This shows that Maez had decided to shoot at them before Maez could determine whether E.L. or G.G. were attempting to use deadly physical force against him. His actions were not reactive. Accordingly, because the record contains not even the slightest evidence that deadly physical force was immediately necessary for Maez's protection, the trial court properly denied Maez's requested self-defense instruction.

## CONCLUSION

¶12        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: AA